IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 17-cv-02842-CMA

DARNELL PITTMAN, SR.,

    Plaintiff,

v.

JACK FOX, Warden,

    Defendant.

___

**ORDER**
___

This matter is before the Court upon Applicant Darnell Pittman, Sr.'s Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (the "Application"), filed November 27, 2017. (Doc. # 1.) United States Magistrate Judge Gordon P. Gallagher issued an Order to Show Cause directing Respondent Jack Fox to show cause why the Application should not be granted on February 17, 2018. (Doc. # 11.) Respondent timely filed a Response to the Order to Show Cause on March 22, 2018.[1] (Doc. # 18.)

---

[1] Applicant requested an extension of time to reply to Respondent's Response to the Order to Show Cause (Doc. # 16), which the Court denied on March 15, 2018 (Doc. # 17). The Court explained that its Order to Show Cause (Doc. # 11) required only Respondent to respond. (Doc. # 17.) Applicant requested reconsideration of the Court's denial (Doc. # 20) and moved for leave to file supplemental pleadings (Doc. # 19). Applicant also filed an untimely Reply to Respondent's Response to the Order to Show Cause on April 12, 2018. (Doc. # 21.) The Court declines to consider Applicant's untimely Reply (*id.*), as it denied Applicant's previous request for an extension of time to file such a reply.

This Court has carefully considered the Application, related briefing, the case file, and the applicable law, and has determined that a hearing would not materially assist in the Court's disposition of the Application. For the following reasons, the Court DENIES the Application.

## I. BACKGROUND

Applicant is a federal prisoner currently incarcerated at the Federal Correction Institution, Administrative Maximum Facility ("ADX") in Florence, Colorado. (Doc. # 1 at 1.)

On January 13, 2016, while incarcerated at the United States Penitentiary Coleman-I ("USP-I") in Coleman, Florida, Applicant was issued Incident Report No. 2804390 (the "Incident Report"), in which Applicant was accused of violating Code 203 for threatening a penitentiary staff member with harm. (*Id.* at 2); *see* (Doc. # 18-4 at 4.) The Incident Report alleged that earlier that same day, Applicant threatened a corrections officer, Officer Goodman, when the officer declined Applicant's request to use the telephone. (Doc. # 18-4 at 4.) According to Officer Goodman's description in the Incident Report, Applicant became agitated, threatened to break the window out and initiate the fire suppression system, and said to him, "Goodman isn't a hard name to find, you think I can't get to you? I'll get to you and your family. You better check my paperwork, you know what I'm back here for." (*Id.*) The Incident Report was delivered to Applicant and referred to the Unit Disciplinary Committee ("UDC") on the following day, January 14, 2016. (*Id.*)

The UDC processed the Incident Report on January 15, 2016. (Doc. # 18 at 2–3.) Applicant told the UDC during its investigation, "I never spoke to Goodman for nothing" and "Goodman came to my door talking shit to me about Officer Washburn." (Doc. # 18-4 at 4.) Applicant alleges that he also told the UDC that he "wished to appoint correctional staff Mr. T. Johnson as his staff representative for the hearing ahead" and that he "wished to call upon two inmates as witnesses in his defense to the charging instruction." (Doc. # 1 at 3.) Applicant alleges that he provided the two inmates' names to the UDC. (*Id.*) The UDC referred the Incident Report to a Disciplinary Hearing Officer (the "DHO") and recommended sanctions of twenty-seven days' loss of good time credit.[2] (*Id.*)

On January 22, 2016, Applicant was transferred from USP-I to United States Penitentiary Coleman-II ("USP-II"), also in Coleman, Florida. (*Id.*); *see* (Doc. # 18-5 at 1.) The Incident Report and related investigation packet were misplaced during Applicant's transfer for USP-II. (Doc. # 18 at 3); *see* (Doc. # 18-4 at 10.)

On February 29, 2016, Applicant was served with another copy of the Incident Report. (Doc. # 1 at 3; Doc. # 18-3.) Here, the parties' factual allegations begin to diverge. Applicant alleges that the report he received on February 29, 2016 was a "manipulated version of the original." (Doc. # 1 at 3.) He further alleges that when the report was delivered to him, he "was not afforded any opportunity/right to make a statement, nor was [sic] his rights read to him." (*Id.*) In contrast, Respondent alleges

---

[2] The UDC also recommended that Applicant lose ninety days of access to visits and the commissary. (Doc. # 18-4 at 4.) These recommended sanctions are not at issue in the Application presently before the Court.

3

that Applicant was advised of and indicated he understood his rights and was given the opportunity to make a statement, to which Applicant replied that he had no comment other than what he already provided. (Doc. # 18 at 3.) Respondent cites to the investigation report by Lieutenant Carr, on which Lieutenant Carr documented this exchange with Applicant. *See* (Doc. # 18-4 at 5.) Lieutenant Carr concluded therein that the re-issued report was "accurate as written" based on "the statement of fact in section1 of th[e] report." (*Id.*)

It is undisputed that on March 1, 2016, USP-II's UDC conducted a hearing about the Incident Report. (Doc. # 18-4 at 6–15.) Applicant stated, "I never spoke to Goodman for nothing[;] Goodman came to my door talking about to be about Officer Washburn."[3] (*Id.* at 14.) The UDC provided Applicant with a Notice of Discipline Hearing Before the DHO and a copy of Inmate Rights at Discipline Hearing, but Applicant refused to sign them. (*Id.* at 6–9.) On the Notice of Discipline Hearing Before the DHO, Applicant indicated that he would like a staff representative ("Officer McSherry") and that he would like to call witnesses at the DHO hearing. (*Id.* at 7.) Applicant did not identify those witnesses or the content of their testimony; he only noted that they were the "same as before." (*Id.*); *see also* (Doc. # 1 at 3; Doc. # 18 at 4.)

DHO Aaron Rich conducted the hearing on March 14, 2016. (Doc. # 1 at 4; Doc. # 18 at 4); *see* (Doc. # 18-4 at 1–3.) DHO Rich later recounted the hearing in an affidavit in support of Respondent's Response to the Order to Show Cause:

---

[3] Applicant alleges that he also told the UDC that "he believed the second UDC hearing was an illegal stunt in an effort to sabotage his hearing process before the DHO." (Doc. # 1 at 3.)

4

> During the DHO hearing, I reviewed [Applicant]'s due process rights with him, including his right to call witnesses and his right to request a staff representative; [Applicant] confirmed he understood his rights and had no documentary evidence to present. [Applicant] also confirmed that he had initially requested a staff representative and witnesses but elected to waive his requested staff representative and witnesses at the DHO hearing. Per [Applicant]'s request, I wrote the following on the "Notice of Discipline Hearing Before the (DHO)": "I request to waive the staff rep and witness," and [r]efused to sign but willing to waive." Lieutenant P. Burns, who was present at the DHO hearing for escort purposes, witnessed both statements via signature. . . . [Applicant] denied the charges and stated: "I am not guilty."

(Doc. # 18-1 at 6) (internal citations omitted); *see also* (Doc. # 18-4 at 1–2.) Applicant describes the hearing before DHO Rich on March 14, 2016, differently. (Doc. # 1 at 4.) Applicant alleges that he "emphasized" to DHO Rich "the fact that it was not [Applicant's] fault" that the original Incident Report—"in which consisted of the witnesses' names [Applicant] had selected in his defense"—was misplaced. (*Id.*) He further alleges that he requested an "opportunity to gather his witnesses via staff representative" because he "had been separated from the facility with his witness[es]." (*Id.*) Applicants states that DHO Rich denied his requests and "proceeded with such hearing without [Applicant's] consent." (*Id.*)

    DHO Rich concluded that Applicant had committed a lesser prohibited act than charged, being insolent toward staff (Code 312). (Doc. # 18-1 at 6; Doc. # 18-4 at 2.) DHO Rich sanctioned Applicant with "14 days disallowed good conduct time; 30 days disciplinary segregation; [and] 120 days loss of commissary privileges." (Doc. # 18-4 at 2.) Applicant received a copy of DHO Rich's report on March 15, 2016. (*Id.* at 3.)

    In his Application, Applicant contends that DHO Rich violated his procedural due process rights at the hearing on March 14, 2016 by "fail[ing] to afford" Applicant his

5

"rightful opportunity to call upon witnesses in which [sic] [Applicant] wished to have testify on his own behalf." (Doc. # 1 at 7.) He further alleges that DHO Rich deprived him of a "fair hearing" by "fail[ing] to appoint [Applicant] a staff representative who could have facilitated [his] effort and ability to re-establish [his] desired witnesses' name(s) and registry numbers." (*Id.*) Applicant asks the Court to "order Respondent to expunge the finding of guilt regarding Incident Report [No.] 2804390 and restore [Applicant's] 14 days of good time credit." (*Id.*)

## II. LEGAL STANDARD

### A. 28 U.S.C. § 2241

"[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Petitions for habeas corpus made pursuant to Section 2241 "are used to attack the execution of a sentence," whereas petitions made pursuant to Sections 2254 and 2255 "are used to collaterally attack the validity of a conviction and sentence." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997). Habeas corpus relief pursuant to Section 2241 may be warranted if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A habeas petition under 28 U.S.C. § 2241, brought in the district where the inmate is confined, is a proper vehicle for challenging the loss of good-time credits." *Bornman v. Berkebile*, No. 14-cv-01997-MJW, 2014 WL 5396169, at *2 (D. Colo. Oct. 23, 2014) (citing *Howard v. U.S.*

*Bureau of Prisons*, 487 F.3d 808, 811 (10th Cir. 2007)); *see also McIntosh*, 115 F.3d at 811–12.

A habeas petitioner "is entitled to receive an evidentiary hearing so long as his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief." *Miller v. Champion*, 161 F.3d 1249, 1253 (10th Cir. 1998); *see also United States v. Lopez*, 100 F.3d 113, 119 (10th Cir. 1996) ("In response to a [28 U.S.C.] § 2255 motion, the district court must hold an evidentiary hearing on the prisoner's claims unless the motion and files and records in the case conclusively show that the prisoner is entitled to no relief." (quotations omitted)); *Wilson v. Oklahoma*, 335 F. App'x 783, 784 (10th Cir. 2009) (finding no error where district court denied applicant evidentiary hearing on 28 U.S.C. § 2241 petition where "nothing in the record [ ] indicate[d] [the applicant] is entitled to any relief").

**B.    DUE PROCESS FOR DISCIPLINARY PROCEEDINGS**

"It is well settled that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment." *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (citing *Taylor v. Wallace*, 931 F.2d 698, 700 (10th Cir. 1991)).  The Supreme Court has held, however, that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974).  To meet the standards of due process in a disciplinary proceeding under *Wolff*,

> the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and

> correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action.

*Superintendant, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985). Additionally, "where the inmate is illiterate or 'the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case,'" due process also requires that the inmate be provided with the aid of a staff representative. *Jordan v. Wiley*, No. 06-cv-02090-WYD, 2009 WL 1698509, *9 (D. Colo. June 17, 2009) (quoting *Wolff*, 418 U.S. at 570).

These due process requirements for a disciplinary hearing are satisfied if "**some evidence** supports the decision by the prison disciplinary board to revoke good time credits." *Hill*, 472 U.S. at 455 (emphasis added); *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). Under this "some evidence" standard, "it is sufficient that there was some evidence from which the conclusion of the administrative tribunal could be deduced and that it committed no error so flagrant as to convince a court of the essential unfairness of the [proceeding]." *United States ex rel. Vajtauer v. Comm'r of Immigration*, 273 U.S. 103, 106 (1927); *see also Hill*, 472 U.S. at 455–56 ("the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."). "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455.

Errors made by prison officials in failing to satisfy these due process requirements are subject to harmless error review. *Farrakhan-Muhammad v. Oliver*,

688 F. App'x 560, 564–65 (10th Cir. 2017) (citing *Grossman v. Bruce*, 447 F.3d 801, 805 (10th Cir. 2006) (holding that the prison official's error in denying witness testimony was subject to harmless error review)).

**C.    *PRO SE* LITIGANTS**

The Court acknowledges that Applicant is proceeding *pro se*. "A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). "The *Haines* rule applies to all proceedings involving a *pro se* litigant." *Id.* at 1110 n.3. The Court, however, cannot be a *pro se* litigant's advocate. *See Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

### III.    ANALYSIS

Applicant's sole claim alleges a procedural due process violation. (Doc. # 1 at 2.) He asserts that DHO Rich violated his constitutional rights at the hearing on March 14, 2016, because DHO Rich: (1) did not afford Applicant "the rightful opportunity to call upon witnesses" to "testify on his . . . behalf" at the hearing; and (2) "failed to appoint [Applicant] a staff representative." (*Id*. at 7.) Applicant does not put forth any evidence in support of these assertions. The Court rejects both of these arguments.

The Court is satisfied that Applicant was not deprived of his right under *Wolff* to "to call witnesses . . . in his defense," *see Hill*, 472 U.S. at 454, and to "have adequate . . . aid in the form of help from the staff," *see Wolff*, 418 U.S. at 570. The Court credits DHO Rich's testimony that at the hearing on March 14, 2016, Applicant "confirmed that

he had initially requested a staff representative and witnesses but elected to waive his requested staff representative and witnesses at the DHO hearing." (Doc. # 18-1 at 6.) DHO Rich averred that "[p]er [Applicant's] request, [he] wrote the following on the 'Notice of Discipline Hearing Before the (DHO)': 'I request to waive the staff rep and witnesses.'" (*Id.*) DHO Rich further testified that because Applicant refused to sign that statement but was willing to waive any witnesses and staff representation, he had Lieutenant Burns, who had escorted Applicant to the hearing and remained present, sign a note stating as much on the Notice of Discipline Hearing Before the DHO. (*Id.*) The Notice of Disciple Hearing form confirms DHO Rich's testimony; it includes two hand-written statements ("I request to waive the staff rep and witnesses" and "Refused to sign but willing to waive") and the signatures of DHO Rich and Lieutenant Burns. (Doc. # 18-4 at 7.) The record thereby refutes Applicant's conclusory assertion that he was denied the opportunity to call witnesses and have a staff representative. *See Mitchell*, 80 F.3d at 1445 (rejecting an inmate's argument that he was not permitted to call witnesses and present evidence on his behalf where the inmate had signed a form waiving his right to do so).

## IV.    CONCLUSION

Therefore, the Application for Writ of Habeas Corpus (Doc. # 1) is DENIED and the case dismissed. It is

FURTHER ORDERED that Applicant's Request for Leave to File Supplemental Pleading (Doc. # 19) is DENIED. It is

FURTHER ORDERED that Applicant's Request for Reconsideration for an Extension of Time to Submit a Rebuttal Response (Doc. # 20) is DENIED. It is

FURTHER ORDERED that Respondent's Motion to Supplement Response to Order to Show Cause (Doc. # 22) is DENIED AS MOOT.

DATED: April 18, 2018

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge